IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMY JOHNSON,

                Plaintiff,

  v.                                         OPINION and ORDER

NANCY BERRHILL,                         18-cv-502-jdp
   Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Amy Johnson seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of the Social Security Administration, finding Johnson not disabled within the meaning of the Social Security Act. The administrative law judge (ALJ), John Martin, concluded that Johnson's spinal disorder was a severe impairment, but that Johnson retained the capacity to perform the full range of light work, including her past jobs as machine operator, machine inspector, and floral designer.[1]

Johnson says that the ALJ erred in the following ways: (1) failing to consider the effect of her spinal disorder and nonsevere impairments in combination; (2) mishandling the medical opinion evidence; (3) conducting a faulty analysis of her subjective complaints; and (4) failing to adequately support the conclusion that she could perform her previous jobs.

The ALJ's decision was not flawless, but it was supported by substantial evidence and it built a "logical bridge" between the evidence and the ALJ's conclusions, which is all that is

---

[1] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job in this category requires much walking or standing (off and on, for a total of approximately six hours of an eight hour workday), and, if sitting, it involves some pushing and pulling of the arms or legs." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

required. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). So the court will affirm the agency's decision and cancel the oral argument scheduled for April 18, 2019.

ANALYSIS

A. **Combination of impairments**

Johnson says that the ALJ failed to assess the combined effects of her spinal disorder with her nonsevere impairments, such as hypothyroidism and microscopic colitis. She doesn't challenge the ALJ's finding that her colitis is well-controlled by medication and she doesn't dispute the commissioner's contention that none of the other nonsevere impairments subjected her to greater limitations than what the ALJ found. But she says that the ALJ committed reversible error because he didn't include a separate discussion in his decision about the effects of her impairments in combination.

It is true that an ALJ is required to consider the "combined effects of the applicant's impairments . . ., including impairments that considered one by one are not disabling." *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). But it is also true that a claimant is not entitled to relief on appeal if she "does not identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). *See also Hoy v. Astrue,* 390 F. App'x 587, 592 (7th Cir. 2010) (rejecting argument that the ALJ failed to consider effect of impairments in combination when the plaintiff "only speculate[d] about the effect of these conditions on him"). So Johnson must do more than simply point to ways in which the ALJ's opinion could have been improved. Because Johnson doesn't identify any way in which her nonsevere impairments, either individually or combined with spinal disorder, would justify further restrictions, this is not a ground for remand.

2

## B. Medical opinions

The ALJ considered several medical opinions that were in the record, including those from Johnson's treating physicians from 2007 and 2009 (Jane Stark and Joseph Hebl), her physical therapists from 2014 and 2015 (Melissa Wold and Darrin Schober), a spine specialist from 2014 (James Freeman), state agency physicians who conducted a review of the records in 2014 and 2015 (Mina Korshidi and Ronald Shaw), and her nurse practitioner from 2014 to 2016 (Denise Toperzer). The ALJ gave "great weight" to the opinions of the treating physicians, the physical therapists, the spine specialist, and the state agency physicians. He gave "some weight" to statements from treating physicians in 2008 that Johnson could return to work. He gave "little weight" to the opinion of the nurse practitioner.

The ALJ also noted statements of three other treating physicians without assigning them particular weight: (1) in 2011, Seeman Rahman refused Johnson's request for "a disability parking permit" because Johnson didn't meet the criteria for disability; (2) in 2015, David Junker gave Johnson a "one-day work excuse" after she said that she "was doing fine" but strained her back putting up a Christmas tree; and (3) in 2015, Gary Gasser reviewed Johnson's MRI and concluded that it "showed normal alignment without instability and mild to moderate disc disease." R. 21 (citing R. 1624–39).[2]

Johnson challenges the ALJ's handling of the medical opinion evidence on the following grounds: (1) he gave inadequate reasons for discounting the nurse practitioner's opinion; (2) his reliance on the opinions of the treating physicians was misplaced because the opinions were outdated; (3) he disregarded portions of the opinions of the spinal specialist and physical

---

[2] Record citations are to the administrative transcript, located at Dkt. 7.

therapists; and (4) his reliance on the state agency physician opinions was misplaced because they didn't have access to all of the medical records. The court will consider each objection in turn.

1. **Nurse practitioner**

Toperzer submitted a letter dated May 2016, in which she wrote the following: (1) "[i]t has been difficult for [Johnson] to stand or sit in any one position for a length of time, severely limiting her ability to . . . work;" (2) Johnson "has been unable to maintain employment because of her medical needs"; (3) Johnson's colitis "flares up quite frequently with uncontrollable diarrhea; and (4) Johnson "is unable to pursue work even on a part-time basis and should be considered disabled." R. 771. In giving this opinion little weight, the ALJ made three observations: (1) it did not come from an "acceptable medical source"; (2) Torperzer appeared to be relying solely on Johnson's subjective statements; and (3) the opinion was conclusory. Johnson challenges each of these grounds.

Johnson is correct than ALJ may not reject a medical opinion simply because it doesn't come from an "acceptable medical source," such as a physician. *See Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015). But it is one factor that the ALJ may take into account. *See, e.g., Winsted v. Berryhill*, 915 F.3d 466, 472 (7th Cir. 2019). Because the ALJ gave other reasons, this was not an error.

As for the ALJ's assessment that Toperzer relied solely on Johnson's subjective complaints, that is a legitimate ground to reject a medical opinion. *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). Johnson says that it was speculative for the ALJ to conclude that Toperzer didn't rely on objective evidence, but Toperzer didn't cite any objective evidence in her letter. Rather, she simply listed Johnson's reported symptoms. Although Johnson's brief

4

includes a string citation of records related to her appointments with Toperzer, *see* Dkt. 13, at 10, Johnson doesn't point to any specific examples of tests or any other objective evidence that Toperzer relied on to make an assessment.

As for the ALJ's view that Toperzer's opinion was not persuasive because it was conclusory, the court sees no error. Toperzer provided no foundation for any of her opinions. In her reply brief, Johnson says that the ALJ should have given Toperzer an opportunity to clarify her opinion, but Johnson forfeited that argument by failing to raise it in her opening brief. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016) (plaintiff "waived . . . arguments by not developing them and by raising them for the first time only in his reply brief"). Regardless, the ALJ was entitled to discount Toperzer's opinion for relying solely on Johnson's subjective complaints.

2. Treating physicians

Johnson says that that the ALJ shouldn't have relied on any opinions that relate to her condition before her 2013 alleged disability onset date. The commissioner says that it was reasonable for the ALJ to take those opinions into account because it is undisputed that the cause of Johnson's spinal disorder is a 2007 back injury. In reply, Johnson says that her condition has worsened since 2007, but she cites no evidence to support that assertion. Under those circumstances, it was not unreasonable for the ALJ to consider the older opinions, particularly because they were consistent with other opinions in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) (medical opinions predating disability period at issue "are nonetheless part of [the claimant's] case record, and should [be] considered by the ALJ"); *Olszewski v. Comm'r of Soc. Sec.*, No. 12-13508, 2013 WL 5488447, at *4 (E.D. Mich. Sept. 30, 2013) ("The ALJ also properly relied on the plaintiff's treating physician's evaluation

5

from [before the alleged disability onset date], because there was no evidence that the condition of his leg had worsened since [then].").

3. Spine specialist

The ALJ wrote the following about James Freeman, who examined Johnson in 2014:

> His notes indicated that he performed a normal physical examination. Dr. Freeman could not find a specific source for Ms. Johnson's pain complaints. In general, Dr. Freeman described a well-developed person, who was not in acute distress. Dr. Freeman observed that Ms. Johnson moved around quite well. The claimant said at the time that she had worked in pain for years though the pain improved after her lay-off from work three years earlier.

R. 21.

Johnson doesn't challenge the accuracy of the ALJ's summary, but she says that it is incomplete. Specifically, she says that the ALJ "did not discuss that Dr. Freeman identified degeneration in the thoracic and lumbar spines that compromised neural foramina creating the potential for nerve root impingement that would be better visualized by other imaging studies, and also identified mechanical sources of pain in Ms. Johnson's tender paraspinal muscles." Dkt. 13, at 11 (citing R. 1496–1502).

Johnson doesn't explain how the statements she cites are inconsistent with the ALJ's decision. After all, the ALJ found that Johnson's spinal disorder was a severe impairment. So the question is not whether there is some evidence of impairment, but whether the ALJ erred in finding that Johnson was still capable of performing light work despite that impairment. Johnson points to nothing in Freeman's statements that would undermine the ALJ's conclusion. In the records that Johnson cites, Freeman stated that there is "mild degenerative change" and "modest wear and tear in [Johnson's] spine." R. 1502–03. He also said that Johnson's "pain generator" was "not clear." R. 1503. Although the ALJ could have been more thorough in his

6

summary of Freeman's notes, this is not an example of "cherry picking" because the ALJ did not omit evidence that undermined his conclusion. *Bates*, 736 F.3d at 1099 ("[A]n ALJ need not mention every piece of evidence in her opinion [so long as she doesn't] ignore a line of evidence that suggests a disability.").

4. **Physical therapists**

The ALJ wrote the following about the opinions of physical therapists Melissa Wold and Darrin Schober:

> Melissa Wold, PT, did an evaluation of the claimant for anticipated further physical therapy on May 13, 2014. She noted that the claimant moaned and groaned throughout the entire evaluation and took five minutes to sit on the table as she dropped to the floor and groaned. She added that twice during the evaluation the claimant laid herself on the floor and would not get up. She observed that the claimant made very little eye contact but that she had full range of motion, normal neurological testing, and strength grossly four out of five.
>
> Later on, she recommended no physical therapy due to lack of objective findings.
>
> Darrin Schober, PT, evaluated the claimant . . . on May 15, 2014. His examination reflected mild mechanical restrictions with no radiographic concerns to explain the complaints, which he suggested were unrealistic. He noted no significant tonal changes or loss of range of motion and believed that there was a strong emotional component involved.

R. 21 (citations omitted).

Again, Johnson say that the summary is incomplete, but she fails to explain how any of the notes she cites are inconsistent with the ALJ's decision. Statements that Johnson was "irritable," "uncooperative," and "harbor[ing] some underlying anger," Dkt. 13, at 12, are not probative of any physical disability. Perhaps more on point are records showing that Toperzer referred Johnson to physical therapy with Wold again in 2015. *Id*. But Johnson doesn't point

7

to the basis for the referral and she doesn't identify anything specific in the records that undermines Wold's observations from 2014. Rather, Wold said in 2015 that Johnson was "respond[ing] well to treatment." R. 1582. So the court concludes that Johnson hasn't shown that the ALJ committed a reversible error by failing to include those records in his analysis.

5. State agency physicians

Both state agency physicians concluded that Johnson suffered from a severe back impairment and that she was limited to light work as a result. Johnson doesn't challenge any part of their analysis, but she says that their opinions were outdated and therefore unreliable because Shaw didn't have access to a 2014 CT scan and neither Shaw nor Khorshidi had access to a 2016 MRI.

Johnson doesn't explain why it matters that Shaw didn't review the CT scan. Khorshidi did have the scan, but it didn't change her opinion. As for the 2016 MRI, Johnson doesn't explain how it differs meaningfully from the 2014 MRI, which both Shaw and Khorshidi reviewed. R. 209, 211, 222.

So all of the opinion evidence supports the ALJ's decision, with the exception of the nurse practitioner. Because the ALJ gave adequate reasons for rejecting that opinion, the ALJ's findings regarding the medical opinions are supported by substantial evidence.[3]

C. Subjective complaints

Johnson challenges the ALJ's assessment of her subjective complaints on several grounds. None are persuasive.

---

[3] In the section of her reply brief devoted to the ALJ's handling of the opinion evidence, Johnson argues for the first time that the ALJ "played doctor" by interpreting various medical records without the assistance of an expert. Dkt. 17, at 6–8. The court has not considered the argument because it was not raised in Johnson's opening brief.

8

First, Johnson says that the ALJ erred by stating that Johnson's "statements concerning the persistence, intensity, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 24. The court of appeals has criticized similar language repeatedly, *e.g.*, *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016), and it is unfortunate that ALJs continue to use it. But the court of appeals has also said that an ALJ's use of incorrect boilerplate is not reversible error "if the ALJ otherwise identifies information that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). In this case, the ALJ correctly identified the two-step process for evaluating a claimant's subjective complaints. R. 22 (ALJ must first determine whether the claimant has an impairment that could produce her symptoms and then evaluate the severity of those symptoms). And the ALJ explained his reasons for questioning Johnson's statements about the intensity, persistence, and limiting effects of her symptoms.

Johnson says that the ALJ did not explain his reasoning adequately. Although it is true that the ALJ did not evaluate Johnson's subjective complaints in one discrete portion of his decision, his reasoning is clear from a review of the decision as a whole. *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions."). In fact, throughout his decision the ALJ identified his reasoning for discrediting Johnson's subjective complaints:

- the objective evidence did not support Johnson's claim, R. 20–21, 23;

- multiple treatment providers questioned Johnson's descriptions of the severity of her symptoms, R. 21, 23;

- Johnson didn't make the same complaints to her treatment providers that she made during the administrative hearing, R. 23; and

9

- treating physicians have been unable to identify the source of Johnson's pain, R. 23.

Johnson criticizes the ALJ for failing to expressly discuss her daily activities or her work history, which she says support her disability claim. But if the ALJ agreed with Johnson that her activities and work history did not undermine her credibility, there would be little reason for the ALJ to discuss them. In any event, the court of appeals has rejected the view that the ALJ must discuss every fact that could bear on a claimant's credibility. *Loveless*, 810 F.3d at 508. And an ALJ's mistakes in evaluating subjective complaints do not require a remand so long as the ALJ's findings are still supported by substantial evidence. *Bates*, 736 F.3d at 1098. Even minor inconsistencies in a claimant's statements can be sufficient to meet that standard. *Id.*

In this case, the ALJ relied on inconsistencies between Johnson's testimony at the administrative hearing and complaints to her treatment providers:

> Ms. Johnson described sleepiness and inability to function due to her medications and reported chest and hip pain in addition to back pain. Ms. Johnson testified that even with her part-time job, she needed frequent breaks and alterations of position, adding that she occasionally had to leave her workstation due to pain. She said that her legs swelled frequently and that she had a flare up of bowel disease about once every week. She said that she would need to be in the bathroom for up to five hours and then go lie down.
>
> Ms. Johnson has not registered these complaints with her treating sources.

R. 23.

Johnson challenges this portion of the ALJ's decision on two grounds. First, she cites several records that she says are evidence that she did complain to treatment providers about the issues the ALJ discussed. Some of the records Johnson cites aren't relevant. For example,

she cites a "function report" that she prepared and submitted to the agency, R. 391, but there is no indication that she gave the report to a treatment provider. Some of the other records do show that Johnson complained about side effects of medications, *e.g.*, R. 1382 (medication for "smoking cessation" makes her feel like she "is in a dream state of mind, feels like she is wearing a skull cap and noticing muscle twitches"), and one record states that Johnson complained about swelling, R. 1359. But Johnson is missing the point. Again, the ALJ did not find that Johnson was symptom free; he was questioning the severity of her symptoms. For example, Johnson points to nothing in her medical records showing that her medications left her unable to function, that her legs swelled frequently, that she had to leave her workstation because of pain, or that she was in the bathroom for five hours because of her colitis. That type of inconsistency is sufficient to support the ALJ's credibility determination.

Second, Johnson says that the ALJ should not have relied on the fact that "she did make not every complaint at every appointment." Dkt. 13, at 16. But the ALJ did not fault Johnson for failing to make all of her complaints all the time. Rather, he thought it was probative that there was no evidence that Johnson had *ever* made some of the complaints she made during the hearing. In light of the serious nature of those complaints, the court cannot say that it was "patently wrong" for the ALJ to draw such an inference. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (court may overturn ALJ's credibility determination only if it is "patently wrong").

Johnson's last objection about the ALJ's credibility assessment relates to the following sentence in the ALJ's decision: "Records relating to microscopic colitis indicated that medications could effectively control this condition with some questions regarding Ms.

11

Johnson's compliance." R. 23. Johnson says that the ALJ failed to explain why he believed that she had not complied with her medication regimen.

The court declines to remand the case on the basis of the ALJ's stray remark. Johnson points to no evidence that the ALJ relied on any failure by Johnson to take her medication as prescribed. Rather, the ALJ made the remark in the context of explaining why he didn't find credible Johnson's testimony regarding the severity of her colitis. The important point was that Johnson's colitis was under control (again, a finding that Johnson doesn't dispute), not that Johnson shouldn't be believed because she wasn't taking her medications.

The court cannot say that the ALJ's evaluation of Johnson's subjective complaints was patently wrong. So the court will not order a remand on that ground.

D. **Relevant past work**

The ALJ concluded that Johnson had failed to meet her burden to show that she was unable to perform her past relevant work as a machine operator, machine inspector, and floral designer. He relied on testimony from the vocational expert that a machine operator qualifies as light work under the *Dictionary of Occupational Titles*, a machine inspector qualifies as sedentary work, and a floral designer qualifies as light work. R. 194–96. Because the ALJ found that Johnson could perform the full range of light work, he also found that Johnson could perform each of these jobs.

Johnson says that the ALJ erred by failing to compare the physical requirements of her past jobs with the restrictions he found in his residual functional capacity assessment. This matters, Johnson says, because she stated that her jobs as a machine operator and floral

12

designer required her to do more than six hours of walking and standing, which is inconsistent with light work.[4] This argument fails for three reasons.

First, Johnson was represented by counsel at the hearing, so she forfeited this argument by failing to object to the vocational expert's testimony. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (when claimant fails to object to vocational expert's testimony about the exertional requirements of a particular job, claimant forfeits objection on appeal). The commissioner raised this issue in her opposition brief, but Johnson ignored it in her reply brief, so she has conceded the point.

Second, Johnson fails to acknowledge in her opening brief that both she and the vocational expert classified her inspector job as sedentary. In her work history report, Johnson wrote that her inspector position required "sitting 12 hours a day" and only "a bit" of walking. R. 350. In her reply brief, she says that she "left her sedentary quality inspector position when she could no longer perform her work due to unpredictable bouts of ulcerative colitis and pain with reaching, lifting, bending, and prolonged sitting." Dkt. 17, at 13 (citing R. 336, 341, and 344). But the records she cites are simply her own description of her symptoms; she doesn't cite any evidence that she was unable to do the job.

Third, "[a] claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment *or* in the manner it is generally performed in

---

[4] In the section of her opening brief related to this issue, Johnson also says that the ALJ's finding that she could perform her past relevant work was erroneous because it was the result of the other errors that Johnson had identified in previous sections of her brief. Dkt. 13, at 16. In her reply brief, Johnson says that the commissioner "implicitly concede[d]" the argument by failing to respond to it. Dkt. 17, at 12. But Johnson was not making a new "argument"; she was simply referring back to arguments she already made. Because the commissioner responded to those other arguments in the appropriate sections of their opposition brief, there was no need to do so again in the context of the section about past relevant work.

the national economy." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019) (emphasis in original). Even if the court assumes that Johnson could not perform her past jobs in the manner she performed them, that would not be dispositive because Johnson does not dispute the vocational expert's testimony that her past relevant work qualifies as light or sedentary work as generally performed in the economy. Johnson says that doesn't matter because the ALJ is always required to conduct a "function-by-function" analysis in which he compares the claimant's specific limitations with the requirements of each job, citing *Rainey v. Berryhill*, 731 F. App'x 519, 523 (7th Cir. 2018). But in *Rainey*, the plaintiff identified particular functions of the jobs that he was unable to perform. *Id.* In this case, Johnson hasn't done that, so she is not entitled to a remand on this or any of her other asserted grounds.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case

Entered April 4, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge